**DAVID ALLEN (SBN 87193)**
DAVID ALLEN & ASSOCIATES
5230 Folsom Boulevard
Sacramento, California 95819
(916) 455-4800 Telephone
(916) 451-5687 Facsimile

Attorneys for Plaintiff
BARBARA HARRIS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA HARRIS, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. Breach of ERISA Plan (ERISA 502(a)(1)(B) and 502(a)(3); and** |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, and DOES 1 to 100, | **2. Attorney Fees & Costs** |
| Defendants. | |

**Introduction**

The policy is a contract outlining the obligations of the insurance company and its insureds. The policy obligates Defendant to pay qualified claimants. Defendant found Plaintiff qualified for benefits. Defendant paid Plaintiff. Defendant terminated payments when it determined she no longer qualified under the plan. Plaintiff provided evidence she remains disabled. Defendant breached its duty when it refused to reinstate benefits.

**ALLEGATIONS**

1. This action seeks damages for the denial of total disability benefits under a disability insurance plan.

**The Parties**

2. Plaintiff BARBARA HARRIS's family is important to her. She worked for many years to support her family. Plaintiff's mother recalls:

   "Barbara got married in December 1997 and moved to California in April 1998. Every weekend Barbara, her husband and her children loved to go roller-blading, sight seeing, hiking, bike riding, play sports etc… . Barbara found enjoyment when family or friends would visit from Indiana because she enjoyed taking them sight seeing.

   Barbara was very involved in her children's schooling and after school sports and activities. She was a volunteer parent chaperone for school field trips and volunteered at the schools."

3. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA is an insurance company underwriting, servicing, and performing all other functions necessary to place and administer benefits for various financial instruments including, without limitation, long term disability insurance policies. "PRUDENTIAL" as used herein, designates THE PRUDENTIAL INSURANCE COMPANY OF AMERICA in all forms in which it exists or existed, or is recognized as existing, during relevant times mentioned in this complaint and in all forms in which it conducts business.

4. Plaintiff is informed and believes and upon such information and belief alleges that each of the defendants named herein was the agent or employee of each of the other defendants, or otherwise affiliated with them, in all the matters alleged herein, and in doing all the matters complained of, acting within the course and scope of such agency, employment or affiliation.

**Jurisdiction and Venue**

5. Venue is properly laid within the United States District Court, Eastern District of California, pursuant to 29 U.S.C. §1132(e)(2) because the employer, plan, and administrator do business within this district, and because the ends of justice so require.

6. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §1337 and 29 U.S.C. §1132(e). Plaintiff's claims arise under the "ERISA" 29 U.S.C. §1001, et. seq.

**Plan**

7. PRUDENTIAL issued a policy ("Plan") to Plaintiff's Employer The Gap, Inc. "EMPLOYER": Policy No. 97980. PRUDENTIAL also issued a Life Insurance Plan.

8. Part of the compensation package EMPLOYER provided Plaintiff BARBARA HARRIS was insurance for long term disability.

9. PRUDENTIAL wrote and administered the insurance plan while doing business in California.

10. Defendant PRUDENTIAL is a corporation acting as the agent for EMPLOYER, and vice versa; Defendants are charged with certain claims-handling responsibilities under the Plan.

11. Defendant PRUDENTIAL funded the disability benefits under the Plan.

12. PRUDENTIAL failed to provide Plaintiff with a complete copy of the Plan.

13. According to PRUDENTIAL'S correspondence, the EMPLOYER Plan states:

> "**How Does Prudential Define Disability?**
>
> You are disabled when Prudential determines that:
>
> - you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury;
> - you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury; and
> - you are under the regular care of a doctor.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.
>
> **Gainful occupation** means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 50% of your indexed monthly earnings within 12 months of your return to work. But, if you enrolled for Option 2, it means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work."

14. The Plan requires applicants to apply for Social Security benefits. Under the Plan, Plaintiff's PRUDENTIAL benefit payment will be offset by her Social Security Benefit

1   payment.

2   15.   Under the policy, the benefit value is 50% of the claimant's salary prior to becoming
3         disabled.

4   16.   While a claimant is disabled under the plan her premiums are paid on the insurance plan.

Claim Value

6   17.   The benefit value is $2,522 per month. Benefits were terminated as of October 1, 1/2019
7         and the maximum payment date is July 12, 2039.

8   18.   The remaining gross total value of the claim under the plan is $570,980.80.

Social Security Claim

10  19.   As required by the Plan, Plaintiff applied for Social Security Disability. She was
11        approved in November, 2007, with a disability onset date of March, 2007. She advised
12        PRUDENTIAL of her approval.

13  20.   Social Security Disability, or Title II of the Social Security Act, is administered by the
14        Social Security Administration. Title II appears in the United States Code as §§401-433,
15        subchapter II, chapter 7, Title 42.

16  21.   The Social Security Administration's website states:

> "The definition of disability under Social Security is different than other programs. Social Security pays only for total disability. No benefits are payable for partial disability or for short-term disability.
>
> "Disability" under Social Security is based on your inability to work. We consider you disabled under Social Security rules if:
>
> You cannot do work that you did before;
>
> We decide that you cannot adjust to other work because of your medical condition(s); and
>
> Your disability has lasted or is expected to last for at least one year or to result in death.
>
> This is a strict definition of disability. Social Security program rules assume that working families have access to other resources to provide support during periods of short-term disabilities, including workers' compensation, insurance, savings and investments."
> http://www.socialsecurity.gov/dibplan/dqualify4.htm
>
> "Your condition must interfere with basic work-related activities for

your claim to be considered. If it does not, we will find that you are not disabled. . . ."
http://www.socialsecurity.gov/dibplan/dqualify5.htm

**Disabling Condition and Primary Denial**

22. During Plaintiff's employment with EMPLOYER, Plaintiff suffered injury causing right side Reflex Sympathy Dystrophy.

23. Plaintiff underwent a variety of treatments. Unfortunately, Plaintiff's condition became worse over time. Plaintiff's doctor recommended she seek disability benefits.

24. Plaintiff applied for Long Term Disability through PRUDENTIAL, beginning September 27, 2006.

25. After making payments for more than ten years PRUDENTIAL engaged in one of its periodic investigations of Plaintiff's claim. On November 18, 2020, PRUDENTIAL wrote to Plaintiff to advise her claim was terminated effective October 1, 2019.

**Plaintiff's Medical Condition**

26. Review of Barbara Harris's medical documentation reveals her Reflex Sympathy Dystrophy became complicated by other conditions as she aged.

27. Review of Barbara Harris's medical documentation at the time of her claim termination revealed:

"History of Present Condition/Mechanism of Injury: Pt. is a 48 years old female who notes gradual onset of carpal tunnel syndrome in her R dominant extremity back in 2006 as a result of cumulative trauma when she was working as an administrative assistant. Later on, she developed complex regional pain syndrome in this extremity and subsequently in the l UE. She states the CRPS also affected both LEs. She received therapy (around 2008-2009) and nerve blocks which helped to regain function. She reports recent exacerbation of symptoms starting 3 months ago (more prominent in the L UE) including generalized pain, edema in the elbow, hypersensitivity to touch, and stiffness in all joints of bilateral upper extremities." 10/28/2020 The Hand Rehabilitation Center of Florida

Witness Observations

28. Plaintiff's cousin, Bob Evans, has known her for 50 years. He wrote:

"[S]he is always in pain, never goes to any family functions because she is embarrassed of her appearance and how she shakes. She stopped going to church. Depressed, she has a hard time paying attention."

5
**COMPLAINT**

29. Doris Robertson, Plaintiff's mother provided insight as to the impact of the injury.

"Barbara was extremely active up until her injury. . . . I've observed several changes in Barbara since her work injury and since she stopped working. Everything she loved doing, she stopped doing. She's no longer physically active or athletic she stopped playing in sports. She stopped going to church and bible studies. She stopped participating in her kids' school activities and volunteering and sports. She even stopped watching basketball. She stopped going on weekend getaways with her husband and children, she doesn't t attend family functions (Christmas, thanksgiving etc....)

Barbara is no longer happy, confident, or energetic. She doesn't like going into public and interacting with people, she doesn't like to be in crowds or noisy places. She became extremely depressed and anxious!

Barbara is embarrassed about her anxiety and by the side effects from her disease (tremors, skin discoloration, deformities, forgetfulness, weakness). She doesn't like to cook anymore. She has no interests and feels worthless! She no longer feels confident, accomplished or successful!

Barbara is in pain and suffering day and night! She doesn't get enough sleep. Her panic attacks are getting worse and so is her condition. I'm concerned if she does go back to work, it will make her worse then she already is!" Doris Robertson 5/24/2022

30. Tanya West, another of Plaintiff's cousins observed:

"She is always in pain, never goes to any family functions because she is embarrassed of her appearance and how she shakes. she stopped going to church. Depressed, she has a hard time paying attention. . . . She doesn't engage in conversations, she has lost relationships with friends and family." Tanya West 5/18/2022

<u>Analysis of Medical Information:</u>

31. *Current Diagnoses*

- Algoneurodystrophy (causing bilateral arm pain and hand stiffness)
- Anxiety
- Arthritis
- Chronic Pain Syndrome
- Complex Regional Pain Syndrome
- Depression
- Foot Pain
- Hip Pain
- Reflex sympathetic dystrophy (RSD) right upper extremity after carpal tunnel repair

"History of Present Illness: Mrs. Barbara Harris presents for initial consultation for pain management evaluation.

Referred by Dr. Prixit Sharma for treatment of RSD. Patient has experienced this pain for a period of 14 years. Patient reportedly was treated in California for the past 14 years. Patient recently relocated to Florida. History obtained, patient is 47 years of age, female, right handed, known history of allergies, she presents with a

chief complaint of chronic pain in all four extremities, which is reported to be related to reflex sympathetic neuropathy." 2/25/2020

32. Barbara Harris's primary care doctor referred her to hand therapy due to her inability to make a tight fist with either hand and her ongoing chronic pain. She attended a number of visits with hand specialist for physical therapy between October 28, 2020 and December 6, 2020. At the beginning of the therapy she indicated an inability to open tightly closed jars, perform heavy household chores, wash her own back, or engage in recreational activities which require some force or impact through arm, shoulder, or hand. The therapist assessed:

"Mrs. Harris presents for evaluation and treatment reporting generalized severe pain in B UES, significant hypersensitivity, and stiffness affecting the functional use of the extremities. Apprehension to movement seems to also been affecting the use of bilateral arms. The AROM in the L UE is more limited than in the RUE, especially in the shoulder and hand. OT intervention will focus on the application of modalities, tissue loading, desensitization/sensory re-education techniques, and the progression of therapeutic exercises toward improving function."

33. The hand therapy ended with a home exercise program including items such as rolling a ball up a wall and reaching as far up as possible. The home exercises caused severe flare up. Her entire right arm locked up. She suffered extreme pain and burning. "I wasn't able to move my hand, fingers, raise my right arm, extend my arm. I ended up going to the emergency at Advent Health Sebring Hospital." The ER took x-rays and gave her a steroid shot.

"The doctor I saw at hospital said I have arthritis in my right arm and shoulder. I believe this was around December 2020. Since then I've had a couple episodes where that's happened again and unable to use my right arm at all. About 6 months or so ago, I was trying to vacuum and it caused another bad flare up. This time it was the same symptoms but it was so bad that I wasn't able to use my right hand and arm to brush my teeth, wash my hair, wash my body properly, fix my hair, extend my arm. My daughter had to help me with hygiene for a few weeks. I'm still unable to use my right arm to its fullest. I'm unable to raise my arm from my side out wards or reach above my head. My fingers are deforming."

Records show she went to the ER for chronic pain syndrome, a check of left elbow pain, and left knee pain July 22, 2020, and again for shoulder pain and swelling December 20, 2020.

34. Mrs. Harris reports medication fails to take the pain away. Her lowest her pain level is 7

out of 10. She observes, however, any pain relief is better than none.

"My skin burns so bad it feels like pouring bleach on an opened wound or 3rd degree burns. The burning is all over from the top and bottom of my feet to scalp. The palms of my hands burn, the back of my hands, my fingers and toes burn. My neck and shoulders burn. The burning causes my body to overheat which causes me to be nauseous."

The skin sensitivity forces her to generally wear tank tops and shorts. She does not walk barefooted or wear socks very often. "I don't use a wash cloth to wash my body they are too rough for my skin." She uses microfiber plush baby blankets to dry off and uses them to wash.

35. Prior to being diagnosed with Chronic Pain Syndrome she, like all people would suffer occasional injury. Since the Syndrome developed the smallest injury feels a 100 times worse.

"If I stub my toe it feels like my toe is being crushed. A scratch feels like I've been cut wide open. It takes at least a month for a mosquito bite to heal. Once it does it leaves a scar. I have hair loss all over my body including my head. The hair on my legs only grows in small areas around my shins.

My hearing is sensitive and my ears ring. My hands are weak and shake sometimes so bad it's difficult to hold onto anything without dropping! I shake so bad if I'm eating the food shakes off the fork or spoon. The cold makes my pain worse, I'm unable to use ice packs, take cold showers or hold on to anything cold. The cold weather is also a trigger for pain flare ups. I'm extremely weak and have lost a lot of muscle in my arms and legs. I believe that is what's causing the muscle cramps in my right calf, leg, foot and arm.

My condition has become unpredictable over the years! Sometimes I can pick up a gallon of milk others times I can't."

36. Similarly sometimes she can hold a coffee mug, and sometimes her condition prevents it.

Repetitive motions triggers pain. "It's hard for me to use scissors, grip a pen to write more than 5 sentences, or hold my arms up to do my hair."

"If I do 1 load of laundry -. that's putting them in washer then dryer then folding - it hurts! It hurts to hold a book and turn the pages to read. It hurts to lay down too long or sit too long. If I sleep longer than an hour and half, it hurts! My body gets stiff, my fingers won't open I have to pry them open. If I toss and turn too much it makes my skin burn more. I have to take my pain medicine at least 40 minutes before I get out of bed just to get out of bed. I haven't had a comfortable full night's sleep in years. My sleep is broken. The simplest things can cause a flare up and the pain to increase! A cold, a change in any medication, the weather, stress, my menstrual cycle. I'm dammed if I do and dammed if I don't. . . . For me it's use it or lose it!! If I do too much it hurts. If I do too little it hurts."

37. During 2021-2022 Barbara was diagnosed with chronic arthritis in her right arm and shoulder, bilateral hands and fingers, left knee, and lower back. "I'm certain it's in my hips and my toes." In addition to the changes in her feet which caused Dr. Jawahir to refer her to a podiatrist, she is now experiencing the same changes in her hands. "My fingers are also deforming. I've lost muscle in arms and legs and I'm very weak for my age."

38. Plaintiff received consistent treatment through the end of 2022. In 2020 her pain levels were typically 8/10. Her pain levels rose to 9/10 by the end of 2022.

    "I also had Covid and was sick for a month to month and half which made my condition worse. Any time I'm sick with cold or flu it takes me longer to get better because my immune system is compromised."

    At her last doctor visit during the appeal period, Dr. Jawahir prescribed medications for leg and foot cramps. "I've been getting severe cramps and the day I saw doctor I had one during our visit. I went from getting them maybe once a week to 3to 4 times a week." Although L3,L4 facet injections were recommended in November, 2022, Barbara was not able to obtain them prior to submitting her final appeal due to the cost. "I'm saving money in order to have the injections."

<u>Medications</u>

39. Medication information:

    - Buprenorphine sublingual 2 mg 2 tablets 3 time day for pain. "I had to adjust this medicine 3 or 4 times over the past 2 years. I started taking 2 mg twice a day but now at 4 mg 3 times a day."
    - Methocarbamol 750 mg 3 time day for muscle cramps spasm in right foot, leg arm.
    - Nortriptyline 3 times a day for depression and anxiety.
    - Prednisone 5 mg twice day to reduce inflammation.
    - Keto/baclo/lido/keta/amit- 5/2/5/5/2% cream used for burning and made by compound pharmacy.
    - Benadryl 100 mg at night for burning and sleep.
    - Ibuprofen 800 mg twice day for pain and inflammation.
    - Melatonin 10 mg at night for sleep.
    - Miralax with other stool softener daily.

Fatigue

40. Fatigue impacts the workplace and must be considered a form of impairment. Fatigue is a workplace hazard. Some research studies shown when workers sleep less than 5 hours before work or when workers are awake for more than 16 hours, their chance of making mistakes due to fatigue are significantly increased. Fatigue may increase a worker's hazard exposure by reducing mental and physical functioning, impairing judgement and concentration, and slowing reaction time. Barbara Harris's chronic sleep disruption increases both her difficulty thinking and pain reaction.

Pain

41. Neuropathy is when nerve damage leads to pain, weakness, numbness or tingling in one or more parts of your body. Doctors rate neuropathy based on the severity of symptoms. The stages of neuropathy are:

- Stage One: Numbness & Pain.
- Stage Two: Constant Pain.
- Stage Three: Intense Pain.
- Stage Four: Complete Numbness/ Loss of Sensation.

Barbara Harris displays stages one, two, and three neuropathy symptoms.

Co-Morbid and Co-Existing Conditions:

42. Plaintiff possesses co-morbid conditions since she suffers from co-existing conditions which independently impact her functionality. When evaluating a claim with co-morbid or co-existing conditions, the impact of those conditions on the whole person should be considered to determine if the combined effect impacts the individual's ability to function in an occupational setting.

Requirements of Employment

43. Plaintiff was employed as an Administrative Assistant III. According to the Dictionary of Occupational Titles Administrative Assistant is a Sedentary rated job which requires the ability to coordinate office services, study management methods, analyze operating practices and position responsibilities, and prepare reports.

1   Barbara Harris's condition has prevented her from performing gainful worked since 2006.
2   Her condition is chronic and continues to degenerate over time. Her condition prevents
3   her from performing even part-time sedentary work.

<u>Lifestyle Changes</u>

44. From the time she moved in 2020 until the end of 2022 Barbara lived next door to her middle son and daughter with her daughter's children. Her family's close proximity meant she could spend time with them without overly fatiguing herself, and her children could assist her to get to and from medical appointments and with any home maintenance Barbara found too taxing. Early 2023 they combined households to save money and further reduce the burden on Barbara of general home care. She now only needs to maintain her bedroom.

"My bedroom has carpet. As for vacuuming, any repetitive movements causes discomfort especially forceful movement (pushing a vacuum). I try to rotate arms as much as possible to even out when vacuuming or any activity."

**Final Administrative Denial**

45. PRUDENTIAL wrote to Plaintiff August 3, 2023 re-affirming its denial of benefits. This denial exhausted Plaintiff's administrative remedies.

46. Plaintiff decided to pursue legal remedy.

**FIRST CAUSE OF ACTION**: **BREACH OF CONTRACT: ERISA PLAN BENEFITS (ERISA 502(a)(1)(B) and 502(a)(3):**

PLAINTIFF BARBARA HARRIS, FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT THE PRUDENTIAL INSURANCE COMPANY OF AMERICA ALLEGES:

47. Plaintiff refers to Paragraphs 1 though 46 above and incorporates those paragraphs as though set forth in full in this Cause of Action.

48. Plaintiff was enrolled under the Plan which at all relevant times was in full force and affect. The terms and conditions of the plans at issue provided the Plaintiff would receive disability payments/income replacement payments due to sickness or injury if she could

    no longer perform the material and substantial duties of her occupation while under a doctor's care. The plan and its promised benefits were provided to Plaintiff as part of her compensation in exchange for providing service to EMPLOYER and is thereby subject to ERISA.

49. Plaintiff performed all the conditions on her part which the plan required her to perform.

50. On or about September 27, 2006, Plaintiff became disabled and timely submitted a claim for disability benefits. PRUDENTIAL denied benefits October 1, 2019. Defendant PRUDENTIAL stated Plaintiff was capable of performing job duties.

51. Defendants breached the terms of the plans thereby violating 29 U.S.C. §1132, ERISA 502(a)(1)(B) and 502(a)(3), by continually refusing and failing to pay disability benefits to Plaintiff.

52. As a direct and legal result of the violation of 29 U.S.C. §1132, ERISA 502(a)(1)(B) and 502(a)(3), by Defendant as herein alleged, Plaintiff suffered, and will continue to suffer in the future, damages under the terms of the policy, plus interest, for a total amount to be determined at the time of trial.

53. Defendants have unreasonably, arbitrarily and capriciously breached the obligations set forth in the ERISA regulations and in the plans issued by Defendants. Defendants unreasonably, arbitrarily and capriciously withheld from Plaintiff the benefits promised by the plan.

54. PRUDENTIAL's evaluation of Plaintiff's claim served the ends of PRUDENTIAL, rather than the insured's best interests. This is a violation of 29 U.S.C. §1132, ERISA 502(a)(1)(B) and 502(a)(3).

**SECOND CAUSE OF ACTION**: **FOR AN AWARD OF ATTORNEYS FEES AND COSTS AGAINST DEFENDANT PURSUANT TO 29 U.S.C. § 1132(g)(1)**

PLAINTIFF BARBARA HARRIS, FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT THE PRUDENTIAL INSURANCE COMPANY OF AMERICA ALLEGES:

55. Plaintiff refers to Paragraphs 1 though 54 above and incorporates those paragraphs as

though set forth in full in this Cause of Action.

56. 29 U.S.C. §1132(g)(1) authorizes this Court to award reasonable attorney's fees and costs of action in an ERISA action.

57. As a result of the actions and failings of the Defendants, Plaintiff retained the services of legal counsel and has necessarily incurred attorney's fees and costs in prosecuting this action. Further, Plaintiff anticipates incurring additional attorney's fees and costs in pursuing this action, all in a final amount which is currently unknown. Plaintiff therefore requests an award of reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them, as follows:

1. Damages to date of judgment for failure to provide full benefits under the Plan, plus interest, including prejudgment interest, in a sum to be determined at the time of trial;

2. For attorneys' fees and expenses reasonably incurred by Plaintiff to obtain the Plan benefits, in a sum to be determined at the time of trial;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court deems just and proper.

DATED: October 25, 2023                    DAVID ALLEN & ASSOCIATES

*//s// David Allen*

By_____
           DAVID ALLEN
           Attorney for Plaintiff, BARBARA HARRIS

13
**COMPLAINT**